United States District Court
District of Connecticut
FILED AT NEW HAVEN

June 7, 20 23

By S. Santos
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In the Matter of the Extradition of Craig John Edward Williams a/k/a Daniel Anthony Hill a/k/a Craig John Edmund Williams

Doc. No. 3:23-mj-527 (MEG)

**FILED UNDER SEAL**

## AFFIDAVIT

I, Andrew Hoffman, a Special Agent with the Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION, BACKGROUND, AND REQUEST

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses, including but not limited to controlled-substances offenses and money-laundering offenses.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since 1998. Upon completion of the 17-week DEA Basic Agent Academy in Quantico, Virginia, I was assigned to the DEA New York Division Office in New York City. In 2008, I was selected for a foreign assignment with the DEA Caribbean Division where I was stationed on the island of Curacao. In 2013, upon completion of the foreign assignment, I was assigned to my current assignment as part of the Bridgeport High Intensity Drug Trafficking Area Task Force (Task Force), which is comprised of personnel from the DEA, Connecticut State Police, Bridgeport Police Department, Norwalk Police Department, Stamford Police Department, Stratford Police Department, Danbury Police Department and Milford Police Department. Prior to joining the DEA, I was a Probation and Parole Officer for the State of Florida for approximately five years.

1

3. I am currently participating in the investigation seeking to find Craig John Edward WILLIAMS who had a provisional arrest warrant in the matter of an extradition issued for his arrest on June 6, 2023, in the District of Connecticut by the Honorable United States Magistrate Judge Maria E. Garcia. Docket No. 3:23mj515(MEG). Based on the information received from the United Kingdom authorities, there is probable cause to believe, and I do believe, that WILLIAMS has committed the following offenses (1) conspiracy to supply a Class A drug (namely cocaine), contrary to section 1 (1) of the Criminal Law Act 1977; (2) conspiracy to supply a Class A drug (namely diamorphine), contrary to section 1 (1) of the Criminal Law Act 1977; and (3) absconding by a person released on bail, contrary to section 6 of the Bail Act 1976 (hereafter referred to as the "Target Offenses") and that his phone will provide evidence of his location for purposes of arrest.

4. I am working this case in conjunction with other law enforcement officers, and based on information that I have learned, there is probable cause to believe, and I do believe, that WILLIAMS currently uses cellular telephone number **475-332-5473** (Target Telephone 1), with service provided by T-Mobile. There is also probable cause to believe, and I do believe that the location information regarding this telephone will help the law enforcement locate and arrest WILLIAMS pursuant to the provisional arrest warrant.

5. This affidavit includes only those facts which relate to the need for, and propriety of, the requested authorization. This affidavit does not purport to set forth all the facts gathered during the investigation of this matter. I am thoroughly familiar with the information contained in this affidavit.

6. This affidavit is submitted in support of an application for an Order authorizing the installation and use of pen-register devices or processes, trap-and-trace devices or processes, and the

disclosure of certain electronic communications records and/or information, about Target Telephone 1, which is described more fully below (hereafter "Pen Register Information").

7. With regard to the aforementioned Pen Register Information, this affidavit sets forth a) sufficient information to establish that there are reasonable grounds to believe that the information likely to be obtained by the installation and use of a pen register device or process and a trap-and-trace device or process on Target Telephone 1 is relevant to an ongoing investigation; and, b) sufficiently specific and articulable facts to establish that there are reasonable grounds to believe that the that electronic communications records and/or information sought is relevant and material to an ongoing criminal investigation.

8. This affidavit is also submitted in support of, and serves as, an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and Sections 18 U.S.C. 2703(c)(1)(A) and 2711(3), authorizing agents of the DEA and or the United States Marshal Service (USMS) to ascertain the physical location of Target Telephone 1 which is described more fully below, including but not limited to E-911 Phase II data or other precise location information concerning Target Telephone 1 (the "Requested Location Information"), for a period of thirty (30) days.[1]

9. Regarding the Requested Location Information, for the reasons set forth herein, there is probable cause to believe, and I do believe, that the Target Offense has been committed, is being committed, and will continue to be committed by the user of Target Telephone 1, namely WILLIAMS. There is, moreover, probable cause to believe that the Requested Location Information will lead to the location and apprehension of WILLIAMS.

---

1 This is the first request for Pen Register and Location Information for Target Telephone 1.

10. One purpose of applying for this warrant is to determine with precision Target Telephone 1's location. However, as discussed below, there is reason to believe Target Telephone 1 is currently located somewhere within the District of Connecticut given WILLIAMS's ties to an ongoing steroids distribution operation based in Milford, Connecticut.

**RELEVANT FACTS**

11. On January 19, 2023, the United Kingdom National Crime Agency provided information to the DEA in Bridgeport, Connecticut, that WILLIAMS was a fugitive from England and may have fled prosecution in England to the Derby, Connecticut area. Agents confirmed that WILLIAMS had entered the United States from Iceland in November 2022.

12. DEA agents in Bridgeport initially observed WILLIAMS on February 2, 2023, in Milford, Connecticut during a surveillance operation. WILLIAMS was observed traveling from a business called APEX HEALTH AND WELLNESS LLC (APEX HEALTH), located at particular address on Cherry Street in Milford, Connecticut, to the downtown Milford Post Office location.

13. APEX HEALTH was identified in a steroid trafficking investigation as a location used by the target of the investigation identified as William DINAN as a location DINAN used to store, mix, and package steroids for distribution. WILLIAMS was observed driving a GMC Envoy with a Connecticut registration that was assigned to a different vehicle. The GMC Envoy was registered to a 2019 silver colored Nissan Altima registered to Robert ARIAS, at a particular address on Harrison Avenue in Milford, Connecticut. Agents surveilled WILLIAMS into the post office and observed WILLIAMS deliver approximately 20 approximately United States Post Office (USPS) boxes to one of the clerks at the post office along with several shipping envelopes. Agents contacted the United States Postal Inspection Service (USPIS) and one of

4

the parcels delivered by WILLIAMS to the post office was seized. The parcel was addressed to Sean PEARSON, at a particular address on W 122nd Street in New York, New York, with a return address of James DEAN, at a particular address on North Avenue in Bridgeport, Connecticut.

14. On February 9, 2023, the Honorable United States Magistrate Judge Maria E. Garcia for the District of Connecticut authorized a search warrant of the suspect parcel. Upon execution of the search warrant, agents recovered two blue bags labeled "Apex Pharma" and "CLOMID 50" containing approximately 50 white colored pills and two small glass vials labeled "HCG 5000" containing a white powdery substance. The labels of the seized items again appeared to be professionally made and produced to appear as though it was sent from a controlled and regulated pharmaceutical or medical facility including an "Rx" and Caduceus symbols emblazed on the labeling. The items seized from the suspect parcel were submitted to the DEA laboratory which confirmed the seized pills are Clomiphene, a substance available only by prescription. The lab was unable to identify the HCG but believe it may be a growth hormone/polypeptides.

15. Throughout the winter and spring of 2023, agents continued surveillance of WILLIAMS who was residing at an apartment located at a particular address on Smith Street in Derby, Connecticut. Records provided by Eversource Utilities on April 13, 2023, revealed that ARIAS, the registered owner of the GMC Envoy, was the utility subscriber at WILLIAMS-apartment. WILLIAMS was observed on multiple surveillances at the Derby apartment and at the APEX HEALTH location where he traveled on a near daily basis in furtherance of the steroids conspiracy with DINAN and others.

16. Additional seizures of suspect parcels delivered by WILLIAMS to the post office took place on March 13, 2023, and April 25, 2023, that resulted in the seizure of steroids and suspected steroids for which lab analysis remains pending.

17. United Kingdom authorities identified WILLIAMS' telephone number as **475-332-5473** (Target Telephone 1). Toll information for Target Telephone 1 shows contact as recently as April 27, 2023, with ARIAS. Target Telephone 1 has also been in contact with three phone numbers from the United Kingdom as recently as May 18, 2023. The last toll production obtained from T-Mobile on or about June 6, 2023, shows that Target Telephone 1 was actively be used as recently as June 5, 2023.

18. Agents last physically observed WILLIAMS in the District of Connecticut on May 23, 2023. WILLIAMS was observed at the APEX HEALTH location utilizing the GMC though the tag on the GMC was changed though it still displayed a registration to a different vehicle. WILLIAMS was observed at the APEX HEALTH location with a female subject and a child believed to be WILLIAMS's wife and daughter who had traveled from the United Kingdom to the United States. Neither WILLIAMS nor the GMC have been observed at the Derby apartment or the APEX HEALTH locations since that date. Given his connection to the DINAN steroids trafficking organization, however, he was still believed to be in Connecticut, yet his precise location is unknown.

### **GENERAL INFORMATION REGARDING CELLULAR TELEPHONES**

19. In my training and experience, I have learned T-Mobile is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II

data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of Target Telephone 1, including by initiating a signal to determine the location of Target Telephone 1 on the T-Mobile network or with such other reference points as may be reasonably available. Based on my training and experience, I know that T-Mobile can collect cell-site data about Target Telephone 1.

21. In my training and experience, I have also learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

## MANNER OF EXECUTION

22. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by Target Telephone 1 or receiving signals from nearby cellular devices, including Target Telephone 1. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to Target Telephone 1 and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by Target Telephone 1 and use that information to determine Target Telephone 1's location, even if it is located inside a house, apartment, or other building. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. To connect with Target Telephone 1, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be Target Telephone 1, and law enforcement will limit collection of information from devices other than Target Telephone 1. To the extent that any information from a cellular device other than Target Telephone 1 is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing Target Telephone 1 from all other cellular devices.

## AUTHORIZATION REQUESTS

23. This affidavit sets forth reasonable grounds to believe the information likely to be obtained by

the installation and use of a pen-register device or process and trap-and-trace device or process on Target Telephone 1 is relevant to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 3123(a). In addition, this affidavit sets forth specific and articulable facts showing that there are reasonable grounds to believe the electronic communications records and/or information concerning Target Telephone 1 is relevant and material to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 2703(d). Among other things, the Pen Register Information will assist in obtaining more insight into his location for purposes of his arrest pursuant to the separately issued warrant.

24. Accordingly, it is requested that the Court authorize the installation and use of a pen-register device or process and trap-and-trace device or process on Target Telephone 1 pursuant to Title 18, United States Code, Section 3123(a), and the disclosure electronic communications records and/or information concerning Target Telephone 1, pursuant to Title 18, United States Code, Section 2703(d).

25. In addition, based upon the information set forth herein, there is probable cause to believe, and I do believe, that the Requested Location Information will lead to evidence of the location of a person to be arrested pursuant to a federal provisional arrest warrant for the Target Offenses. In my experience, individuals, usually carry their cell phone on their person. Thus, as there is probable cause to believe, and I do believe that WILLIAMS is using Target Telephone 1, I respectfully submit that there is probable cause to believe and I do believe that the Requested Location Information will assist in locating Target Telephone 1, will enable agents to meaningfully direct surveillance efforts, and will, correspondingly, assist in the arrest of WILLIAMS pursuant to the federal arrest warrant.

26. Accordingly, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Sections 2703(c)(1)(A) and 2711(3), it is requested that the Court issue a warrant and Order authorizing agents of the USMS or the DEA to obtain the Requested Location Information for a period of thirty (30) days.

27. It is further requested that the Court direct the carrier for Target Telephone 1 to assist agents of the USMS and the DEA by providing all information, facilities, and technical assistance needed to ascertain the Requested Location Information, and further direct the carriers for Target Telephone 1 to initiate a signal to determine the location of Target Telephone 1 on the carrier's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed warrants, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of Target Telephone 1, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

28. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate Target Telephone 1 outside of daytime hours.

29. It is further requested that, pursuant to Title 18, United States Code, Section 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

30. It is further requested that the warrant and this affidavit and any other related documents, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid

premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on special agents and other investigative and law enforcement officers of the DEA, the USMS, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and the carriers for Target Telephone 1 as necessary to effectuate the Court's Order.

_____
Andrew Hoffman, DEA Special Agent

Subscribed and sworn to before me in person on this 7<sup>r</sup> day of June 2023.

_____
HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone (Target Telephone 1) is assigned telephone number **475-332-5473**, whose service is provided by T-Mobile. Target Telephone 1 is used by WILLIAMS.

2. Information about the location of Target Telephone 1 that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

3. This warrant also authorizes the use of the electronic investigative technique described in Attachment C to identify the location of Target Telephone 1.

## ATTACHMENT B

**Things to be Seized**

All information about the location of Target Telephone 1 described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of Target Telephone 1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of Target Telephone 1 on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The DEA shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## **ATTACHMENT C**

In connection to locating a person to be arrested, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by Target Telephone 1 for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by Target Telephone 1 in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).